IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS SALISBURY, | ) | CASE NO. 5:11-CV-2277 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Chris Salisbury's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I.  PROCEDURAL HISTORY

Plaintiff, Chris Salisbury ("Plaintiff" or "Salisbury"), applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits on September 23, 2009, alleging he became disabled on August 9, 2000, due to suffering from two herniated discs and high blood pressure.  (Tr. 119-29, 51-52, 163).  The Social Security Administration denied Salisbury's applications for benefits initially and upon reconsideration.  (Tr. 51-60).  Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of his

applications.  (Tr. 81-82).  The administration granted Salisbury's request and scheduled a hearing.  (Tr. 83-86).

On May 24, 2011, Administrative Law Judge Barbara Sheehe (the "ALJ") convened a hearing in Akron, Ohio to evaluate Plaintiff's applications.  (Tr. 26-50).  Plaintiff appeared with counsel and testified before the ALJ.  (*Id.*).  Vocational expert, Ted Macy (the "VE"), also appeared by telephone and testified during the proceeding.  (*Id.*).  On June 29, 2011, the ALJ issued an unfavorable decision finding that Plaintiff was not entitled to benefits.  (Tr. 7-21).  In reaching her decision, the ALJ applied the five step sequential analysis,[1] and concluded that Salisbury retained the ability to perform work which existed in significant numbers in the national economy.  (*Id.*).  Following the issuance of the ALJ's opinion, Plaintiff sought review of

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

the ruling from the Appeals Council. (Tr. 6). However, the council denied Salisbury's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Salisbury, born on September 29, 1975, was 24 years old on his alleged onset date, and 35 years old at the time of his hearing before the ALJ. (Tr. 51). Accordingly, at all relevant times, Plaintiff was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff completed the 10th grade and has past experience working as a landscaper, material handler, sales person and construction worker. (Tr. 31, 38-39, 45-46).

## II.  MEDICAL HISTORY[2]

Plaintiff was initially injured in September 2000 while working as a landscaper. He fell while mowing grass and injured his legs. (Tr. 239). Following the accident, Salisbury complained of pain in his shins and lower back, and numbness and swelling in his feet. (Tr. 246). In December 2000, Plaintiff presented to Dr. Wesley Chou for a consultative appointment regarding his lower back pain. (Tr. 252-53). Dr. Chou's examination revealed Plaintiff suffered no motor weakness or muscle atrophy. (Tr. 253). Plaintiff's straight leg raising test was negative bilaterally and his gait was normal. (Tr. 252-53). Dr. Chou also noted that Salisbury's electromyography ("EMG") test results showed normal findings in his lower extremities. (Tr. 253). He prescribed Plaintiff Neurontin for his back pain and directed Plaintiff to return for a follow up visit in six months. (*Id.*).

---

[2] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

Throughout 2000 and 2001, Salisbury continued to complain of lower back pain. Therefore, on May 22, 2001, Salisbury underwent a magnetic resonance imaging ("MRI") scan of his lumbar spine. (Tr. 266-67). The scan revealed disc herniation at L5-S1, compression of the thecal sac, and posterior displacement of his left S1 nerve root. (Tr. 267). However, there was "no evidence of extruded nuclear material or a free disc fragment." (*Id*.).

On April 25, 2002, Plaintiff underwent a second MRI of his lumbar spine. (Tr. 281-82). The results of this scan were consistent with those from the MRI performed in May 2001. (*Id*.). Doctors again noted disc herniation and compression of the thecal sac. (Tr. 282). The scan also revealed mild bulging and degenerative changes at T11-T12. (*Id*.).

Finally, on June 25, 2009, a third MRI scan was performed on Plaintiff due to continuing complaints of lower back pain and numbness in his lower extremities. (Tr. 295-96). This scan showed disc degeneration at L1-2 and L2-3, shallow left foraminal nuclear protrusion at L3-4 contacting the left L3 nerve root, mild facet arthropathy, and a small nuclear protrusion/herniation at L5-S1, contacting the left S1 nerve root. (Tr. 295). In October 2009, Plaintiff presented to Dr. Scot Miller for surgical consultation. (Tr. 233). Dr. Miller opined that Salisbury may have had suffered microtrauma or microinjury to his nerve root and recommended Salisbury undergo physical therapy and epidural injections. (Tr. 232).

Subsequently, Salisbury received a series of three epidural injections to manage his pain. His first injection was administered in February 2010. (Tr. 359). Afterwards, Plaintiff reported he was very satisfied with the results as his pain significantly decreased following the procedure. (Tr. 357). Salisbury received his second and third injections in March 2010. (Tr. 355, 449). However, when Plaintiff presented to his doctor in April 2010, he complained that the pain in his back and legs was slowly returning. (Tr. 446).

4

On February 9, 2010, Dr. Murrell Henderson performed a one-time consultative examination on Plaintiff.  (Tr. 330-32).  In summarizing Plaintiff's medical history, Dr. Henderson noted Plaintiff's long-standing back pain related to the ruptured disc in his back.  (Tr. 330).  The doctor also noted that Plaintiff had not underwent surgery, and claimed that he could not sit for more than 20 minutes at a time or walk for more than two blocks.  (*Id*.).  At the completion of his examination, Dr. Henderson concluded Salisbury had a decreased range of motion in his lumbar spine due to weakened strength in his hips bilaterally.  (Tr. 331).  However, the doctor did not observe any limitations in the range of motion or strength of Plaintiff's upper extremities.  (*Id*.).  Therefore, the doctor opined Salisbury "likely could tolerate some sedentary jobs provided he was able to move about frequently because of low back pain."  (*Id*.).  The doctor also commented that Plaintiff could lift and carry up to 10 pounds.  (*Id*.).

On March 19, 2010, state agency reviewer, Dr. James Gahman, assessed Plaintiff's physical residual functional capacity ("RFC") to work.  (Tr. 427-34).  Dr. Gahman opined Salisbury could lift up to 20 pounds occasionally and 10 pounds frequently.  (Tr. 428).  He also found Salisbury could stand, walk or sit for approximately six hours each work day, and had an unlimited ability to push or pull.  (*Id*.).  Dr. Gahman commented that despite Plaintiff's pain and discomfort, he remained capable of performing light or sedentary work.  (Tr. 428-29).  Furthermore, the physician opined that the medical evidence of record did not support the degree of limitation alleged by Plaintiff regarding his ability to stand, walk and lift.  (Tr. 432).

On June 17, 2010, state agency reviewer, Dr. Dimitri Teague, evaluated Plaintiff's medical condition.  (Tr. 455).  Dr. Teague noted Plaintiff continued to complain of pain even after receiving epidural injections in his back.  (*Id*.).  Dr. Teague also acknowledged Salisbury's complaints of headaches and chest pain.  (*Id*.).  Nevertheless, he concluded that the objective

5

medical evidence did not fully support Plaintiff's allegations regarding his symptoms. (*Id*.). Accordingly, Dr. Teague affirmed Dr. Gahman's RFC assessment as written. (*Id*.).

### III.  ALJ's RULING

The ALJ made the following findings of fact and conclusions of law in her application of the five-step evaluation process. At step one, the ALJ found Salisbury had not engaged in substantial gainful activity since his alleged onset date of August 9, 2000. (Tr. 12). At step two, the ALJ held that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, disc herniations at L4-L5 and L5-S1, a lumbosacaral strain/sprain, fibromyalgia, asthma, chronic obstructive pulmonary disease and hypertension. (*Id*.). But, at step three, the ALJ ruled that none of these impairments, individually or in combination, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-13).

Before moving to the next step, the ALJ assessed Salisbury's RFC to work. The ALJ held Plaintiff retained the ability to perform sedentary work. (Tr. 13-19). However, the ALJ noted that Plaintiff's employment must permit a sit/stand option. (*Id*.). Based upon these findings, at the fourth step in the evaluation process, the ALJ held that Plaintiff could not return to any of his past positions because they each required Plaintiff to perform more than sedentary tasks. (Tr. 19). Notwithstanding, at step five, the ALJ ruled there were other jobs, existing in significant numbers in the national economy, which Plaintiff could perform, such as that of an assembler, table worker or bench hand. (Tr. 20).

### IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security

6

Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

7

VI.  ANALYSIS

Plaintiff presents two issues for the Court's review.  First, Salisbury claims the ALJ failed to properly analyze whether he met or equaled a listing at step three of the analysis.  Second, Salisbury challenges the ALJ's RFC assessment, contending it does not accurately account for his limitations.  Neither of Plaintiff's objections is well-taken.

A.  Listing 1.04

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 416.925(a), 404.1525(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 416.925(c)(3), 404.1525(c)(3).

A claimant will be deemed disabled if his impairments meet or equal one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the listing's requirements.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question.  20 C.F.R. §§ 416.926(b)(3), 404.1526(b)(3).  To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 416.926(a), 404.1526(a).

Here, Plaintiff argues that the ALJ wrongly concluded that he did not meet or equal any listing, namely Listing 1.04, 20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.04 ("Listing 1.04"). Listing 1.04 covers the following:

> Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.04. The ALJ ruled Plaintiff did not meet or equal this listing because as a preliminary matter, none of Plaintiff's medical records showed that his nerve root or spinal cord was compromised. (Tr. 13). The ALJ also found that Salisbury's straight leg raising tests yielded mostly negative results, and that there was no evidence indicating Salisbury suffered from spinal arachnoiditis. (*Id.*).

9

To rebut the ALJ's finding that there was no evidence indicating Plaintiff's nerve root or spinal cord was compromised, Plaintiff points to his MRI results, which he suggests proves such compromise existed.  Plaintiff notes that his MRIs revealed displacement of his left S1 nerve root, compression of the thecal sac, and the possibility of microinjury or microtrauma to his nerve root.  Plaintiff also contends that at a minimum, the ALJ should have consulted with a medical expert to determine whether the compression, displacement or contact with his nerve root noted in the MRIs established the listing's preliminary requirement of a "compromise" to the nerve root in order to show he met or equaled Listing 1.04.

Though there are instances where an ALJ must obtain medical expert opinion evidence, Salisbury has not shown that his case warranted any further action.  Additional expert testimony is necessary when 1) "in the opinion of the administrative law judge . . . the case record suggest[s] that a judgment of equivalence may be reasonable" or 2) "additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding".  SSR 96-6p, 1996 WL 374180, at *4.

In *Curry v. Secretary of Health & Human Services*, the Sixth Circuit addressed this issue. No. 87-1779, 1988 WL 89340, at *4-5 (6th Cir. 1988) (unpublished).  In that case, Curry argued that the ALJ should have retained a medical expert to testify as to whether his impairments combined to medically equal a listed impairment.  *Id*. at *4.  The Sixth Circuit rejected this argument.  *Id.* at *5.  The court held, *inter alia*, that because two state agency experts had considered whether the claimant's impairments medically equaled any listing, it was not necessary for the ALJ to secure the opinion of another medical expert to testify on the issue.  *Id*. Accordingly, it upheld the Commissioner's decision that Curry's impairments did not meet or equal any listing.  *Id*.

The same is true in Plaintiff's case. State agency physicians, Drs. Gahman and Teague, reviewed Plaintiff's entire medical record and concluded that Plaintiff did not meet or equal any listing. Both doctors signed off on "Disability Determination and Transmittal" forms (Form SSA 831) indicating that Plaintiff was not disabled. (*See* Tr. 51-54). The doctors' signatures on these forms signaled that each of them had considered the question of whether Salisbury met or equaled a listing. *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Curry*, 1988 WL 89340, at *4-5. Each of Plaintiff's MRIs was completed prior to Dr. Gahman's and Dr. Teague's review of Plaintiff's medical record. Accordingly, the doctors were privy to the findings upon which Plaintiff now relies, yet, neither doctor found Plaintiff to meet or equal Listing 1.04. Thus, these doctors' opinions not only provide substantial support for the ALJ's ruling that Plaintiff did not meet or equal Listing 1.04, but also negate Plaintiff's contention that the ALJ should have retained a medical expert to testify at his hearing. *Id*.

### B.  Plaintiff's RFC

Next, Salisbury challenges the ALJ's finding regarding his RFC. The ALJ held Plaintiff retained the ability to perform sedentary work so long as the position provided a sit/stand option. Plaintiff contends this assessment does not adequately portray his abilities because it misinterprets the opinion of Dr. Murrell Henderson—to which the ALJ assigned great weight.

Specifically, Plaintiff notes that following his consultative examination, Dr. Henderson opined Plaintiff could tolerate sedentary jobs, but only if Plaintiff "was able to *move about*

11

*frequently*". (Tr. 331) (emphasis added).  Plaintiff contends that the ALJ misinterpreted Dr. Henderson's statement as requiring a sit/stand option, but instead should have construed this limitation as meaning that Salisbury would need to "be away from [his] work station frequently". (Pl.'s Br. at 19).

The difference between the two interpretations of Dr. Henderson's statement is critical because the VE testified that there were a significant number of jobs available to accommodate a person limited to sedentary work with a sit/stand option.  (Tr. 47).  However, the VE testified that there were no jobs that could accommodate a person who was limited to sedentary work and would need to be away from his workstation frequently, which Plaintiff's counsel defined as 15-20 percent of the time.  (Tr. 49).

Although this assignment of error presents an interesting issue, "the ALJ's findings are not to be overturned unless there is no substantial evidence supporting such conclusions." *Kirk, supra*, 667 F.2d at 535.  Accordingly, based on the Court's review of the evidence as a whole, it finds there is support in the record to uphold the ALJ's ruling that a sit/stand option was sufficient to accommodate Plaintiff's limitations.  First, the ALJ's decision to give great weight to Dr. Henderson's findings did not mean that the ALJ had to adopt every restriction noted by the doctor.  *Sonnenlitter v. Comm'r of Soc. Sec.*, No. 1:12-cv-43, 2012 WL 4794639, at *15 (N.D.Ohio Oct. 9, 2012); *Smith v. Astrue*, No. 1:12-cv-831, 2012 WL 6607007, at *8 (N.D.Ohio Dec. 18, 2012).  In other words, while physicians may opine about the claimant's ability to work, the ultimate responsibility for determining the claimant's RFC lies with the ALJ.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  Therefore, the ALJ's decision to give great weight to Dr. Henderson's opinion did not obligate the ALJ to find it was necessary for Plaintiff to "move about frequently" as Dr. Henderson

concluded.

Additionally, there is support for the ALJ's ruling that Plaintiff's limitations could be accommodated by a sit/stand option. Plaintiff reported to both Dr. Henderson and to the ALJ that he could only sit for approximately 15 to 20 minutes at a time. (Tr. 36, 330). Although Plaintiff also told the ALJ that he would have to move around throughout the day, rather than simply alternate between sitting and standing, the ALJ did not fully credit Plaintiff's statements. Instead, based on her review of the record, the ALJ concluded that Plaintiff's conservative treatment, positive clinical signs and daily activities demonstrated that Plaintiff could perform sedentary work provided a sit/stand option was available. The ALJ's decision was based upon a reasoned examination of the evidence, including Plaintiff's past injuries, low back pain and other impairments, and the medical opinion evidence. Notably, neither the state agency physicians, nor Dr. Henderson indicated that Plaintiff's impairments required him to be away from his workstation for up to 20 percent of the day as Plaintiff suggests. Accordingly, the record supports the ALJ's ruling. *See Bell v. Sec'y of Health & Human Servs.*, No. 92-1655, 1993 WL 127943, at *3 (6th Cir. Apr. 22, 1993) (unpublished) (finding that a sit/stand option adequately accounted for plaintiff's need to "move about" given the ALJ's review of the record, and the fact that plaintiff's doctor did not mention a need to "walk around").

It was Plaintiff's burden to prove his impairments so restricted his ability to work. *Kirk*, 667 F.2d at 530. Plaintiff's reliance upon Dr. Henderson's opinion is not well-founded because the doctor did not state that Plaintiff would need to be away from his workstation, and Plaintiff did not provide any proof demonstrating that Dr. Henderson's comment intended to convey this limitation. As a result, the ALJ was not obligated to include this unsubstantiated claim in his hypothetical question presented to the VE, or to rely upon the VE's testimony presented in

response to the hypothetical question which included it. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: February 1, 2013.